ABILENE STATE SCHOOL and Texas Department of Mental Health & Mental Retardation, Appellants,

v.

Johnie L. SLAUGHTER, Appellee.

No. 4949.

Court of Civil Appeals of Texas, Eastland.

Jan. 6, 1977.

Rehearing Denied Jan. 27, 1977.

Jack Sparks, Austin, for appellants.

William S. Perry, Joanne Strauss, Robinson, Hanna, Chappell, Burke & Moore, Inc., Abilene, for appellee.

WALTER, Justice.

Johnie L. Slaughter recovered a judgment against Abilene State School and Texas Department of Mental Health and Mental Retardation for $49,300.00 as damages for personal injuries sustained in a tractor accident.

The defendants have appealed, contending the School District is not liable since the tractor was not a motor vehicle under the terms of the Texas Tort Claims Act.

Art. 6252–19, Sec. 3, Texas Tort Claims Act, Liability of Government Units is as follows:

"Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death and to $10,000 for any single occurrence for injury to or destruction of property."

"Application to school and junior college districts

Sec. 19A. The provisions of this Act shall not apply to school districts or to junior college districts except as to motor vehicles."

Slaughter and Gary Garner were spraying pecan trees at the school on June 14, 1973, when Slaughter was injured. Slaughter filled a 55-gallon barrel, which was attached to the tractor, with water. While he was in the act of "poking the hoses back in the barrel," the tractor started moving. Slaughter instructed Garner "cut it off, it was in reverse . . . when he, I guess, instead of catching the switch, he caught the gas, and it just jumped back and the axle hit me right in the back."

The personnel director of the school testified the tractor involved in the accident was used only on the premises of the school. He said:

"I know of no tractors that have a license plate on them. They have a triangle, with a warning sign that it is a slow-moving vehicle. That is on the back of the tractor."

The evidence discloses the school maintains a cemetery and some property at Fort Phantom Lake each some distance from the school. The witnesses did not recall the tractor involved in this accident being used off the school premises at these sites, but testified their International tractor had been used at these places.

Abilene State School is an independent school district under the laws of the State of Texas. Insofar as this school district is concerned, the State has waived sovereign immunity only for damages resulting where

a motor vehicle is involved. The School contends the 1953 John Deere farm tractor involved in this accident was not a motor vehicle within the meaning of the statute and that *Brookshire v. Houston Independent School District*, 508 S.W.2d 675 (Tex. Civ.App.—Houston (14th Dist.) 1974, no writ) supports its contention.

Is a tractor a "motor vehicle" as that term is used in Section 19A of the Texas Tort Claims Act? The act does not contain a definition of the term "motor vehicle".

In the *Brookshire* case the court held a forklift, powered by electric batteries, used to move and stack merchandise in the warehouse was not such a motor vehicle.

One of the cases relied upon by Slaughter is *Davis v. National Casualty Co.*, 142 Tex. 29, 175 S.W.2d 957 (1943). The court was considering an accident policy insuring the claimant against death or dismemberment resulting from bodily injury. The claimant was working for a rig-building contractor moving a derrick over a public highway. The derrick was being pulled on rollers by a tractor. While carrying the rollers to the front end of the derrick, his foot was caught under a roller and his foot was crushed and later amputated. The court held:

> "It is our opinion that the contrivance or device by which petitioner was struck was a 'vehicle' within the ordinary meaning of the word. The tractor, the derrick and the rollers under the derrick, taken together, were a device or instrumentality assembled and used to transport the derrick from one place to another. The vehicle thus formed was propelled by the gasoline used in the tractor's motor. We give no importance to the fact that the rollers were not attached to the derrick . . . ."

The court considered the *Davis v. National Casualty Co.* case, supra, in its opinion in *Brookshire v. Houston Independent School District*, supra, and said:

> "Appellant relies upon *Davis v. National Casualty Co.*, 142 Tex. 29, 175 S.W.2d 957 (1943), which involved the definition of 'motor vehicle' in an insurance policy

according to its ordinary import. There a caterpillar tractor was pulling an oil derrick on rollers over a public highway. The Supreme Court observed that the statutory definitions of 'vehicle' in Articles 6675a and 6687b were 'substantially the same' as the definitions found in the cases when that term is given its general and ordinary meaning. The Court held that *the tractor together with its derrick was a 'vehicle,'* but nothing said therein conflicts with this Court's holding, *since the tractor was obviously designed to be driven at times on the public highway* and was actually so employed at the time of the accident . . . ." (Emphasis added)

In *International Insurance Company in New York v. Hensley Electric Steel Company, Inc.*, 497 S.W.2d 64 (Tex.Civ.App.—Waco 1973, no writ), the court said:

> "We think the plain, ordinary, and generally accepted meaning of the word 'motor vehicle' is a self-propelled vehicle designed for, intended to be used for, or actually used to transport persons and property over roads or highways."

We hold the tractor involved in this accident is a motor vehicle within the meaning of Section 19A of the Texas Tort Claims Act.

■ We find no merit in appellants' point they are not liable under the fellow-servant doctrine.

Appellants contend the School is not liable to one servant for injuries caused by the negligence of another servant where both are engaged in a common employment or enterprise. The Texas Tort Claims Act provides to the contrary. It provides as follows:

> " . . . Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, . . . ."

■ We sustain appellants' point the court erred in admitting the testimony of Dr. Krege who testified by deposition.

Dr. Krege, an orthopedic surgeon at Lackland Air Force Base, testified substantially as follows:

"I am licensed to practice medicine in Georgia and Florida, but not in Texas. I examined Johnie L. Slaughter one time on September 26, 1975 and obtained from him a history of his accident and the injuries he received. He complained of pressure pain in the upper back and frequent pain in the low back as well as both groin areas. He further complained of intermittent right shoulder discomfort and frequent aching in the left ankle. After I had received this history, I examined him."

The witness was asked this question by Slaughter's attorney:

"Doctor, assuming the truth of the history which you obtained from Mr. Slaughter, upon your examination—that is, that on June 14, 1973, that while working as an employee of the State of Texas, that he was injured by being struck by a tractor tire several times, and, also, as some of your findings from X-rays, and your findings from your physical examination of him, do you have an opinion, based upon a reasonable degree of medical probability, as to whether or not the condition that you found to exist and which you have explained to the jury, was a direct result of being injured by that tractor on June 14, 1973?"

The witness was permitted to answer the question.

At another point, the doctor was asked:

"Q  From your physical examination of Mr. Slaughter, and your discussion with him, do you have an opinion as to whether or not the condition of his body, with regard to his pelvic area, sacroiliac area, would be causing him some pain?

A  Yes. At the time of history and examination, I felt that the man did definitely have a problem in this area.

Q  Doctor, is this something that is going to be with him for the rest of his life?

A  Yes, but it might be modified with treatment.

Q  Now, have you seen Mr. Slaughter other than the one time?

A  I did not. One time.

Q  And the only time you saw him was on September 26, 1975?

A  That's right.

Q  At that time, did you prescribe any treatment for Mr. Slaughter?

A  No, I did not.

Q  Did you examine him solely for the purpose of giving your opinion as to his condition?

A  Yes."

In *Pacific Employers Insurance Company v. Gibson*, 419 S.W.2d 239 (Tex.Civ.App.—Dallas 1967, no writ), the court said:

"The rule of law governing this situation is firmly established in our jurisprudence and is set forth in 63 Tex.Jur.2d § 447, p. 483, as follows:

'A doctor who is not a treating physician, and who examined the patient only for the purpose of making a report and testifying if necessary, cannot base his opinion as to the condition of the patient on the history of the case as related to him by the patient. It must be based on a study of objective symptoms and X rays.'

The rationale of this rule was developed many years ago and was clearly enunciated by the court in *Gaines v. Stewart*, 57 S.W.2d 207 (Tex.Civ.App., Austin 1933), which involved a case in which the doctor examined the injured party not for treatment but to enable him to testify as a witness. The court in holding the doctor's opinion testimony inadmissible said:

'The test in such case appears to be whether the motive and opportunity to fabricate without detection the symptoms complained of is presented. Undoubtedly a qualified physician can testify as to symptoms and conditions of injury or disease made known to or

discovered by him in his treatment of his patient. Or to such conditions as he finds in the patient from his own independent examination of him. But where an injured party, for the express purpose of qualifying a physician to testify in his behalf about matters on which such party seeks a recovery, makes statements as to subjective matters of pain, suffering, etc., not disclosed to the physician by other and independent means, there exists both motive and opportunity for the patient to magnify or feign injuries. Under such circumstances his statements become clearly self-serving and hearsay, and should not be admitted.'

Again, Justice Leslie of the Eastland Court of Civil Appeals in *Texas Employers' Ins. Ass'n v. Wallace*, 70 S.W.2d 832 (Tex.Civ.App., Eastland 1934), expressed the reasoning behind the rule which prohibited the testimony of the examining physicians, as follows:

'We are of the opinion that the foregoing testimony, admitted over said objections, was inadmissible. The doctor's opinion was based in some undetermined measure, and in part, at least, upon hearsay statements made to him by the injured employee. It is a sound rule of law which prohibits the introduction of such testimony. The opinion of an expert should not be permitted to go to a jury when the same is predicated in whole or in part, upon the unsworn statement of an interested party who may be tempted to unduly magnify the basis or grounds upon which the validity of the opinion depends . . . .' "

Proper objections were made to Dr. Krege's testimony and we hold the court erred in admitting such testimony.

The judgment of the trial court is reversed and the cause is remanded.